Argued and submitted February 11, reversed and remanded June 9, 1980

## HIRANSOMBOON,
*Respondent,*

*v.*

## UNIGARD MUTUAL INSURANCE COMPANY,
*Appellant.*

(No. A 7703-04054, CA 13445)

612 P2d 306

Edward H. Warren, Portland, argued the cause for appellant. With him on the briefs were Lauren M. Underwood and Acker, Underwood, Beers, Smith & Warren, Portland

Bruce A. Rubin, Portland, argued the cause for respondent. With him on the brief were William B. Crow and Miller, Anderson, Nash, Yerke and Wiener, Portland

Before Schwab, Chief Judge, and Richardson and Joseph, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

This is an action against an insurance company, Unigard, to require it to satisfy a judgment against plaintiff that plaintiff contends is covered under a policy defendant issued to plaintiff. Defendant contends that the policy was canceled by plaintiff's agent before the date of the accident that gave rise to the judgment. Plaintiff's insurance broker did, in fact, instruct defendant to cancel the policy before the date of the accident. Plaintiff contends, however, that his broker had no authority to cancel the policy. Thus, the dispositive issue is the scope of plaintiff's agent's authority.[1]

The trial court directed a verdict for plaintiff, in effect ruling that as a matter of law plaintiff's agent lacked authority to cancel the policy. Defendant had also moved for a directed verdict and assigns the denial of that motion as error. We hold defendant's motion for a directed verdict should have been granted because we conclude as a matter of law that plaintiff's agent did have authority to cancel the policy. We therefore reverse.

In February of 1972 plaintiff appointed Marsh & McLennan, Inc., his "Sole Agent and Broker" to handle all of his business and personal insurance needs. In February of 1973 Marsh & McLennan wrote to defendant Unigard Mutual Insurance Company regarding an existing policy issued to plaintiff: "Confirming our telephone conversation, would you please delete the liability insurance coverages under the captioned [policy number]." At the same time as the cancellation of the liability portion of the Unigard policy, Marsh & McLennan purchased liability insurance for plaintiff from United Pacific Insurance Company. Marsh & McLennan wrote to plaintiff on March 7, 1973, notifying him of these changes:

---

[1] In arguing about plaintiff's agent's "authority," the parties apparently mean actual authority. No argument is presented based upon plaintiff's agent's apparent authority.

"We are enclosing United Pacific Insurance Company policy #LP 1413494 providing liability protection * * *.

"The policy replaces coverage previously in the Unigard Mutual Insurance Company * * *."[2]

On April 4, 1973, plaintiff was involved in an automobile accident in Thailand. A passenger in his car was injured. The passenger brought an action against plaintiff and obtained a judgment against him for $20,097.74.

The liability portion of the Unigard policy that Marsh & McLennan had previously purported to cancel would have covered that loss. The United Pacific policy that Marsh & McLennan had obtained purportedly to replace the Unigard coverage did not cover the loss arising from plaintiff's accident in Thailand because it did not apply to automobile accidents outside the United States.

Marsh & McLennan was aware that plaintiff's business required him to travel abroad often and that plaintiff desired automobile liability coverage while outside the United States. There is thus no doubt that, as between plaintiff and Marsh & McLennan, the latter breached a duty to plaintiff in substituting the United Pacific policy for the liability portions of the Unigard policy. Indeed, one of Marsh & McLennan's employes so testified:

"Q: Did * * * Marsh-McLennan have authority in your opinion to reduce or take away any of [plaintiff's] coverage without replacing it with something of equal value?

"THE WITNESS: No."

However, the question remains of whether, as between plaintiff and defendant Unigard, the latter's liability coverage was effectively canceled by Marsh & McLen-

---

[2] Plaintiff testified that he never saw this letter, but there was evidence that it was sent to plaintiff and that an enclosed invoice was paid. In any event, plaintiff never responded or objected in any way. We think this evidence at least arguably presented a jury question on whether plaintiff ratified the actions of his agent.

[496]

nan acting as plaintiff's agent in February, 1973, before plaintiff's automobile accident in Thailand in April, 1973.

Despite a course of dealing that would compel a contrary conclusion, plaintiff maintains that Marsh & McLennan was never his agent for any purpose. Plaintiff relies upon ORS 744.165, which provides:

> "Any person who solicits or procures an application for insurance shall in all matters relating to such application for insurance and the policy issued in consequence thereof be regarded as the agent of the insurer issuing the policy and not the agent of the insured. Any provisions in the application and policy to the contrary are invalid and of no effect whatever."

This rule — that an insurance agent represents the insurer, not the insured — is limited to "matters relating to [an] application for insurance and the policy issued." The statute has only been applied to misstatements on applications for insurance and interpretation of policy language. *State Farm Fire v. Sevier,* 272 Or 278, 537 P2d 88 (1975); *Hayes Truck Lines v. Investors Ins.,* 269 Or 565, 525 P2d 1289 (1974); *Bunn v. Monarch Life Insurance,* 257 Or 409, 478 P2d 363 (1971). Nothing in ORS 744.165 prohibits an insurance agent from canceling a policy pursuant to the instructions of or on behalf of the insured.

Turning to general agency principles, the parties are in substantial agreement about the relationship between plaintiff and Marsh & McLennan. After communicating and discussing his business and personal insurance needs, plaintiff expected Marsh & McLennan to select, procure and maintain appropriate insurance policies. Plaintiff was not familiar with any distinctions between insurance companies; instead, he relied upon Marsh & McLennan's discretion and expertise. Before the present dispute arose, Marsh & McLennan had canceled some of plaintiff's insurance policies, substituting others. Marsh & McLennan always notified plaintiff of these changes, including the one at issue here. Plaintiff never objected.

[497]

The parties' dispute is quite narrow. Plaintiff contends that although Marsh & McLennan may have had authority to *cancel* an insurance policy, there was no authority to *eliminate* coverage, which Marsh & McLennan did by changing from the liability portion of the Unigard policy (covered overseas automobile accidents) to the United Pacific policy (did not cover overseas automobile accidents). Several cases support that subtle distinction. *K. C. Working C. Co. v. Eureka-Sec. Ins. Co.,* 82 Cal App 2d 120, 185 P2d 832 (1947); *Cat 'N Fiddle, Inc. v. Century Insurance Company,* 213 So2d 701 (Fla 1968); *Farrar v. Mayabb,* 326 SW2d 337 (Mo App 1959); *Westchester Fire Ins. Co. of New York v. Cannon,* 79 SW2d 920 (Tex Civ App 1934). The rationale of these cases, generally, is that an agent's authority to cancel an insurance policy is conditioned upon obtaining a replacement policy that provides at least as much protection for the insured.

We are not persuaded. In other agency situations, when an agent makes or revokes a contract with a third person in violation of conditional authority, the agent's principal is nevertheless liable to the third person *unless the third person knew or should have known that the agent was exceeding his conditional authority.* Restatement (Second) Agency §§ 165A, 166 (1958). The above insurance cases impose no similar knowledge requirement, but we see no sound reason for a different rule in the insurance context.

Furthermore, it seems to us that the rule plaintiff would have us adopt would place an impossible burden on an insurance company. Applied to these facts, plaintiff's proposed rule would have required defendant, when it received Marsh & McLennan's request to cancel the liability portion of plaintiff's policy, to attempt to ascertain whether Marsh & McLennan was simultaneously obtaining a substitute policy that provided the same protection in an equally sound company.

Finally, plaintiff's proposed rule overlooks the basic distinction between an agent's authority to act versus an agent's responsibility to produce certain consequences. If an agent is authorized to perform a certain act on behalf of his principal, the principal cannot escape liability that arises from that act because the principal does not like the consequences.

For all of these reasons, we conclude and hold that Marsh & McLennan's authority to cancel plaintiff's insurance policies meant just that and included the authority to cancel plaintiff's policy with defendant before plaintiff incurred what would otherwise have been a covered loss. Plaintiff's remedy, if any, lies with Marsh & McLennan, not this defendant.[3]

Reversed and remanded.

---

[3] We express no opinion on whether plaintiff's possible ratification of Marsh & McLennan's action, *see* n 2, *supra,* would have any effect on plaintiff's possible remedies against Marsh & McLennan.