Tony VINA, Plaintiff and Appellant,

v.

JEFFERSON INSURANCE COMPANY OF NEW YORK, a corporation, and Transwestern General Agency, a corporation, Defendants and Respondents.

JEFFERSON INSURANCE COMPANY OF NEW YORK, Third–Party Plaintiff,

v.

Jon DUNN, Third–Party Defendant and Respondent.

No. 880132–CA.

Court of Appeals of Utah.

Sept. 21, 1988.

David E. Yocum, Salt Lake City, for plaintiff and appellant.

David W. Slagle, Salt Lake City, for defendant and respondent Jefferson Ins.

Paul N. Cotro–Manes, Salt Lake City, for defendant and respondent Transwestern General Agency.

H. Wayne Wadsworth (argued), Thomas P. Melloy, Watkiss & Campbell, Salt Lake City, for third-party defendant and respondent Dunn.

Before GREENWOOD, BILLINGS and DAVIDSON, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff, Tony Vina, appeals the trial court's judgment of no cause of action entered in his lawsuit against Jefferson Insurance Company of New York (Jefferson) and Transwestern General Agency (Transwestern). Vina claims Transwestern improperly cancelled his insurance policy without his knowledge or consent and should pay his insurance claim for the losses he sustained after cancellation of the policy. Vina further contends the trial court erred in ruling that his motion to amend his complaint to include Dunn as a defendant was not timely and did not relate back to the date of the original complaint.

In 1977, Vina subleased a tavern to Beverly Pencille. Pencille agreed to insure Vina's equipment on the premises, including electronic games, pool tables, juke boxes, cigarette machines, restaurant and bar equipment. In the spring of 1979, Vina and Pencille met with Jon Dunn, a licensed insurance agent and broker, to discuss procuring insurance for the tavern. Dunn worked through an independent insurance agency, Walter Sondrup Insurance Agency, and had previously secured insurance for Vina. Dunn met with Vina and Pencille at the tavern and discussed with them the type and amount of insurance coverage desired. Dunn was informed that the insurance policy was to cover the tavern as well as Vina's equipment. Dunn obtained a quote for insuring the tavern from Transwestern and communicated the quote to Pencille and Vina. After receiving Vina and Pencille's authorization to acquire the insurance, Dunn filled out a Transwestern questionnaire and incorrectly indicated that the insured entity was a partnership. Vina and Pencille never saw the questionnaire.

Subsequently, the policy was issued through Transwestern with Jefferson as the insuring company. Both Pencille and Vina received a copy of the policy which stated that the named insured was "Beverly Pencille and Tony Vina, d/b/a Bevie–Lee's Friendly Tavern." On the policy, a box was checked indicating that the insured was a corporation. Neither Pencille nor Vina complained that the policy implied that the parties were operating as a corporation or joint venture rather than as lessor and lessee. Shortly after the policy was issued, Pencille, with Vina's knowledge and consent, contacted Dunn to reduce the amount of coverage. Dunn met with Pencille at the tavern and Pencille signed a change endorsement reducing the amount of coverage. Vina did not sign the change endorsement but received a copy.

In early November 1979, Pencille informed Dunn that she was going to sell the business or cease operation on November 28, 1979 when the lease expired and wanted to cancel the insurance policy as of that date. On November 15, 1979, Dunn met Pencille at the tavern, without Vina's knowledge or consent, and Pencille signed a form cancelling the insurance coverage. Vina did not sign or receive a copy of the cancellation form and did not know that the insurance had been cancelled.

Pencille, however, did not close the tavern in November 1979. During December 1979, Dunn drove by the tavern and observed that it had not closed. On December 31, 1979, the tavern was fire-bombed and the contents, including Vina's games and equipment, suffered extensive damage. Vina contacted Dunn, requested investigation and coverage for the losses incurred, and was notified that the insurance on the tavern had been cancelled effective November 28, 1979. After Jefferson refused to pay his claim, Vina filed a complaint with the Utah State Insurance Commission. Following a hearing before the Commission in September of 1980, the Commission found that Vina's insurance coverage could not be effectively cancelled without proper notice of the cancellation to Vina and ordered Jefferson to pay Vina's claim. Jefferson appealed to the Utah Supreme Court. Before the appeal was heard, Vina commenced this action against Jefferson and Transwestern and the pending appeal to the Utah Supreme Court was dismissed.

On March 30, 1982, Jefferson filed a third-party complaint against Dunn, claiming that in the event of judgment against Jefferson, Jefferson was entitled to indem-

nification from Dunn. On June 24, 1985, the court entered an order requiring all motions to amend the pleadings to be heard by August 30, 1985. On September 3, 1985, Vina filed a motion to amend his complaint to add Dunn as a defendant. The court heard Vina's motion to amend at the commencement of trial on October 1, 1985. The court took the motion under advisement, and, at the conclusion of the trial, denied the motion to amend.

The court entered findings of fact and conclusions of law stating that Dunn was not an agent of Jefferson or Transwestern but was an agent of Vina and Pencille for purposes of obtaining insurance coverage. The court concluded that Jefferson and Transwestern were entitled to rely on Dunn's representation that Pencille had the authority and power to cancel the insurance policy without further signature of or notice to Vina. Accordingly, the court ruled that the insurance policy was effectively cancelled and Vina's losses were not covered.

### I

On appeal, Vina contends the trial court erred in ruling that Dunn was not an agent of Jefferson and Transwestern in writing or cancelling Vina's insurance policy coverage. According to Vina, Dunn was the agent of Jefferson and Transwestern and his negligence in misinforming Transwestern that Vina and Pencille were a partnership and in cancelling the policy without Vina's knowledge or consent should be attributed to Jefferson and Transwestern. We examine Vina's argument under both statutory and general agency law.

■ Examining first applicable statutes, we review the trial court's statutory interpretation as a question of law. *Gonzales v. Morris,* 610 P.2d 1285, 1286 (Utah 1980). Utah Code Ann. § 31–17–1 (1985) [1] defines an agent as:

any person authorized by an insurer and on its behalf to solicit applications for insurance or to effectuate and countersign insurance contracts or to collect premiums on insurance so applied for or effectuated.

Utah Code Ann. § 31–17–2 (1985) defines a broker as:

(1) [A]ny person who, on behalf of the insured, as an independent contractor for compensation and not acting as an agent of the insurer, solicits, negotiates, or procures insurance or reinsurance or in any manner aids therein, for insureds or prospective insureds other than himself. A broker is not an agent or other representative of an insurer and does not have power, by his own act, to bind the insurers upon any risk or with reference to any contract.

(2) If a person is licensed to act as an insurance broker and as an insurance agent, he shall be deemed to be acting as an insurance agent in the transaction of insurance placed with those insurers for whom an appointment has been filed with the commissioner in accordance with section 31–17–10 and which is then in force.

■ Dunn does not qualify under the definition of an insurance agent provided in section 31–17–1 because he was not specifically authorized to solicit insurance or otherwise act on behalf of Jefferson or Transwestern. Dunn was an independent agent working through the Walter Sondrup Insurance Agency. Dunn testified that he contacted Transwestern because the insurance companies for whom he was a licensed agent did not write the kind of policy Vina and Pencille wanted. Dunn had no authority from Transwestern to bind insurance coverage or to issue a policy, but could only do so with Transwestern's express permission on a case by case basis. Dunn was clearly acting as an insurance broker as defined in section 31–17–2(1), as he was an

**1.** Because the statutes defining agent and broker are substantive rather than procedural, we apply the statute in effect at the time the cause of action arose. *Carlucci v. Utah State Indus. Comm'n,* 725 P.2d 1335, 1336 (Utah 1986). Be-

cause the cause of action in this case arose in 1980 when Jefferson refused to pay Vina's insurance claim and allegedly breached the contract, we apply the insurance statutes in effect in 1980.

independent contractor acting for a prospective insured and not for an insurer.

Section 31–17–2(2) provides that one may be licensed and act as both an insurance agent and an insurance broker, but is only deemed to be acting as an insurance agent when an appointment has been filed by an insurer under section 31–17–10. Dunn had not been appointed as an insurance agent by Jefferson or Transwestern and, therefore, under section 31–17–2(2) he was not an insurance agent for either company.

As a result, in these circumstances, the court correctly found that under the controlling statutes, Dunn was not acting as an agent of Transwestern or Jefferson, but was a broker acting as the agent of Vina and Pencille.

■ We must also consider whether Dunn was the agent of Jefferson and Transwestern or of Vina under general agency principles, because the insurance code's purpose is "primarily for the purpose of regulating insurance companies, agents, brokers, solicitors and adjusters" and does not supplant ordinary legal principles of agency. *Farrington v. Granite State Fire Ins. Co.*, 120 Utah 2d 109, 232 P.2d 754, 756 (1951). The question of whether an insurance agent is the agent of the insurer or the insured is a question of fact. 3 Couch on Insurance 2d § 25:106 (1984). We defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

■ The trial court found that Dunn was not an agent of Jefferson or Transwestern, but was the agent of Vina in procuring insurance coverage. An agent is "a person authorized by another to act on his behalf and under his control." *Western Elec. Co. v. New Mexico Bureau of Revenue*, 90 N.M. 164, 561 P.2d 26, 29 (1976). The existence of an agency relationship is determined from all the facts and circumstances in the case. *Id.* "An insurance agent, so far as the insurer is concerned, is a person expressly or impliedly authorized to represent it in dealing with third persons ... [and] is commissioned and employed by an insurance company to solicit and write insurance by and in the name of the compa-

ny." 3 Couch on Insurance 2d § 26:1 (1984); *see also Raymond v. Zeringue*, 422 So.2d 534, 536 (La.Ct.App.1982). However, "[a]n insurance broker, like other brokers, is primarily the agent of the first person who employs him and is therefore ordinarily the agent of the insured as to matters connected with the procurement of the insurance." 3 Couch on Insurance 2d § 25:95 (1984). Further, "an independent agent who solicits insurance for the insured and places that insurance with an ... insurance company is, if anyone's agent, the agent of the insured and not of the insurance company." 16 Appleman, *Insurance Law and Practice* § 877 (1981).

The Utah Supreme Court addressed whether an insurance salesman was an agent for the insurer in *Farrington*, 232 P.2d at 756. In *Farrington*, co-insurers sought to avoid liability for a fire loss on the basis that an insurance salesperson had wrongfully failed to disclose the dilapidated condition of the property. The Court found there had been no material misrepresentation of the property's condition and affirmed judgment for the insured. The Court also noted that the insurance salesman, who was the vice-president of a real estate and insurance business, customarily solicited and sold insurance through the agent for the co-insurers and affixed his company's name on the policies issued. Therefore, the Court found under those circumstances, that the insurance salesman was acting as the insurers' agent in that his knowledge as to the property's condition was imputed to the insurers.

In *Hiransomboon v. Unigard Mut. Ins. Co.*, 46 Or.App. 493, 612 P.2d 306 (1980), the court came to a different result. In *Hiransomboon*, plaintiff had designated an agency, March & McLennan, to handle all his insurance needs. March & McLennan cancelled a portion of plaintiff's existing liability coverage and secured a new liability policy. Plaintiff was subsequently involved in an automobile accident in Thailand. The new policy did not cover accidents outside the United States, although the prior policy would have provided coverage. It was undisputed that March &

McLennan had breached its duty to plaintiff, but the court needed to determine if such failure was binding on the prior insurer. The court noted that there had been an extensive history and course of dealing between plaintiff and March & McLennan, and that March & McLennan had selected, procured, maintained, cancelled and substituted insurance policies for plaintiff, with no objections by plaintiff. Under these facts, the court found that March & McLennan was acting as plaintiff's agent in cancelling the insurance, noting that "when an agent makes or revokes a contract with a third person in violation of conditional authority, the agent's principal is nevertheless liable to the third person *unless the third person knew or should have known that the agent was exceeding his conditional authority.*" *Id.* 612 P.2d at 308 (emphasis in original). Similarly, in *Britten v. Payne,* 381 So.2d 855 (La.Ct. App.1980), the court found that an insurance salesperson was not the agent of the insurer where the salesperson could only quote premiums and could not bind insurance prior to the insurance company's approval.

In the present case, the facts more closely parallel those in *Hiransomboon* and *Britten,* than *Farrington.* Similar to *Hiransomboon,* Vina and Pencille gave Dunn discretion to choose an insurance policy for them based on the best price he could find. Dunn was unable to obtain the desired policy from any of the companies for whom he was a licensed insurance agent and, as a result, contacted Transwestern. However, unlike *Farrington,* there was no evidence that he had prior dealings with Transwestern. Dunn received a premium quote from Transwestern and communicated it to Vina and Pencille, and they authorized him to secure the insurance policy. Dunn procured insurance for Vina both before and after the loss occurred in this matter, none of it through Transwestern or Jefferson. Vina had physical possession of the policy which inaccurately characterized the insured, but he did not object. Likewise, he did not object when insurance coverage was reduced without his written concurrence. The circumstances establish a course of conduct, as in *Hiransomboon,* where Vina authorized Dunn to act for him in regard to all of his insurance needs. Furthermore, the facts do not indicate that Transwestern or Jefferson authorized Dunn to act for them to any significant degree, except to perform ministerial acts. He could not act on their behalf to establish or alter the business relationship between Jefferson and Vina. Therefore, the trial court's finding that Dunn was not the agent of Transwestern or Jefferson, but the agent of Vina, when he cancelled the policy is not clearly erroneous. In addition, the trial court properly found that based upon the course of conduct, Transwestern and Jefferson acted reasonably in cancelling the insurance coverage.

## II

Vina further contends that the trial court erred in denying his motion to amend the complaint to add Dunn as a third-party defendant. Vina argues that even though the motion was not filed within the applicable statute of limitations, it should relate back to the filing of the original complaint in 1982.

Utah R.Civ.P. 15(c) provides "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Generally, Rule 15(c) does not apply to amendments which substitute or add new parties to those brought before the court by the original pleadings, because such amendments amount to assertion of a new cause of action and defeat the purpose of statutes of limitations. *Doxey–Layton Co. v. Clark,* 548 P.2d 902, 906 (Utah 1976). However, an exception to this rule exists "where there is a relation back, as to both plaintiff and defendant, when new and old parties have an identity of interest; so it can be assumed or proved the relation back is not prejudicial." *Id.* The rationale for the exception is to prevent mechanical use of the statute of limitations to foreclose adjudication of a claim where the real parties in interest were sufficiently alerted to the proceeding from an early stage. *Id.*

In *Doxey–Layton*, plaintiffs sued deceased sellers of real property and others to quiet title in a percentage of the property's mineral rights. Several months later, plaintiffs filed a second amended complaint and a motion to substitute the deceased's heirs as defendants in place of the deceased. The Court held that the amended pleading related back to the date of the filing of the complaint, finding that the substituted defendants knew of the proceedings and were involved from an early stage in the litigation. However, in *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 219 (Utah 1984), the Utah Supreme Court stated that Rule 15(c) did not permit a third-party complaint to be filed after the statute of limitations had expired that sought indemnification for a subcontractor from his supplier and a manufacturer, because the new parties had no notice of the claims against them within the period of the statute of limitations.

In *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853 (9th Cir.1986), the court discussed the federal counterpart of our rule, Fed.R. Civ.P. 15(c), and affirmed denial of a motion to file an amended complaint naming two new defendants after expiration of the statute of limitations. The court quoted from a United States Supreme Court case setting forth the criteria required under the rule:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Id.* at 856 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 2384, 91 L.Ed. 2d 18 (1986)). In *Kilkenny*, denial of the motion was based on the fact that plaintiff had known the identity of the new defendants since the filing of an answer by the originally named defendant three years earlier. Therefore, plaintiff could not legit-imately claim any mistake as to the identity of the proper parties. The court noted that Rule 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party. Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation. *Id.* at 857–8.

In this case, Jefferson's third-party complaint against Dunn, which was filed with its complaint in March 1982, claimed a right to indemnification from Dunn if it were found to be liable to Vina, claiming that Dunn had cancelled the policy as an independent agent. In comparison, Vina's proposed amended complaint claimed that Dunn had acted negligently in cancelling the policy without Vina's knowledge or consent and sought damages resulting from the cancellation. The claims of Jefferson against Dunn are not comparable in theory or damages sought to those of Vina against Dunn. Therefore, Dunn did not have notice of Vina's potential claims against him within the period of the statute of limitations, nor did he have an identity of interest with those originally named as defendants. Essentially, Dunn was not in the same position as defendants in the original complaint and his status as a third-party defendant was not the same as it would be if he were a named defendant. Also, Vina deposed Dunn in November 1984, so that Vina was apprised of facts pertinent to his proposed amended complaint well before he attempted to file it, in early September 1985. Consequently, the amended complaint does not relate back to the original complaint and is barred by the statute of limitations.

AFFIRMED.

BILLINGS and DAVIDSON, JJ., concur.