1999 Utah Ct. App. 359

**Diana CHILDS fka Diane Callahan, Petitioner and Appellant,**

v.

**William K. CALLAHAN, Respondent and Appellee.**

**No. 990051–CA.**

Court of Appeals of Utah.

Dec. 9, 1999.

---

Leonard E. McGee and Neil B. Crist, Neil Crist & Associates, Bountiful, for Petitioner.

David S. Dolowitz, Cohne, Rappaport & Segal, Salt Lake City, for Respondent.

Before WILKINS, P.J., and BILLINGS, and DAVIS, JJ.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Diana Childs appeals from an order denying her request for modification of a divorce decree to permit her to share in William Callahan's military retirement pay. We affirm.

## BACKGROUND

¶ 2 Childs and Callahan were married in March 1965, and had two children during the course of their marriage. In 1966 Callahan joined the military on a full-time basis. In 1979, after nearly thirteen years of active duty, Callahan left the military.

¶ 3 In June 1981, the United States Supreme Court decided *McCarty v. McCarty,*

453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), holding that federal law precluded state courts from dividing military retirement benefits under state community property laws. However, in 1982, Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. §§ 1401–1408 (amended 1990), to address the *McCarty* decision. USFSPA permits the former spouse of a military service member to receive up to fifty percent of the service member's retirement benefits. *See id.* § 1408(c)(1). USFSPA became effective in 1983, and affords individuals who were divorced between June 26, 1981 and February 1, 1983 (the McCarty gap), the opportunity to return to court for the purpose of claiming a share in their former spouse's military retirement benefits.

¶ 4 The parties in this case were divorced in March 1982 and therefore, fall squarely within the McCarty gap. However, at the time of the divorce, Callahan was ineligible for military retirement benefits because he had accumulated only thirteen years of creditable military service. In order to qualify for retirement benefits, the military requires its members to accumulate at least twenty years of creditable military service, either through full-time active duty service or part-time reserve service.

¶ 5 In 1984, Childs issued a subpoena to Callahan inquiring about his income, including his "military reserve service." Thereafter, Childs filed a Petition to Modify the Decree of Divorce, requesting an order increasing Callahan's child support obligation which the trial court ultimately granted. Sometime after the divorce was finalized, Callahan re-affiliated with the military reserves. Childs alleges that Callahan became eligible to qualify for military retirement benefits by including the thirteen years he served while the parties were married with the time he spent in the reserves after the parties divorced.

¶ 6 In January 1998, Childs read an article that led her to believe that she may be entitled to one-half of Callahan's military retirement benefits which accrued during the parties' marriage. After reading the article, Childs contacted an attorney to represent her in this matter. In April 1998, more than sixteen years after the divorce was finalized, Childs filed a Petition to Modify the Decree of Divorce, claiming she had only recently discovered she was entitled to a share of Callahan's military retirement. Childs asserted that the enactment of the USFSPA, which nullified *McCarty*, now entitled her to a share of Callahan's military retirement benefits.

¶ 7 Callahan filed a motion to dismiss arguing that the subsequent legal recognition of pension benefits as marital property is not a substantial change of circumstances that would justify reopening the parties' divorce decree. The trial court agreed and granted Callahan's motion on the basis that "a change in law is not enough to constitute a substantial change of circumstances justifying the reopening of a decree of divorce." The trial court further concluded that Childs had failed to demonstrate a factual change in circumstances that would warrant a modification of the decree. Callahan subsequently requested attorney fees on the basis that Childs's claims were without merit and asserted in bad faith. The trial court denied Callahan's fee request. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 We address two issues on appeal. First, we consider whether the trial court erred in holding there had been no substantial change of circumstances sufficient to justify reopening the divorce decree. Second, we address whether the trial court erred in denying Callahan's request for attorney fees. Because both claims are questions of law, we review them under a correction of error standard, giving no deference to the trial court. *See Toone v. Toone*, 952 P.2d 112, 114 (Utah Ct.App.1998) (stating whether a divorce decree should be reopened to divide a military pension is a question of law); *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1257 (Utah Ct.App.1996) ("Whether attorney fees are recoverable in an action is a question of law, which is reviewed for correctness.").

## ANALYSIS

### I. Military Retirement Benefits

¶ 9 Childs argues that she is entitled to a modification of the parties' divorce decree

because: (1) USFSPA was enacted in order to allow a former spouse of a military service member to receive a portion of the service member's retirement benefits; and (2) the vesting of Callahan's military retirement benefits constitutes a substantial change in circumstances which justifies a modification of the divorce decree. We disagree.

### A. Change in Law

¶ 10 Childs first argues that she is entitled to a share of Callahan's military retirement benefits under USFSPA because Callahan accumulated a portion of his benefits during the parties' marriage and their divorce occurred during the McCarty gap. However, this argument alone does not support Childs's request for modification of the divorce decree. In order to justify a change or modification of the original divorce decree, Childs must demonstrate that "a substantial change in circumstances has occurred since the entry of the decree." *Thompson v. Thompson*, 709 P.2d 360, 362 (Utah 1985) (citations omitted).

¶ 11 In the present case, Childs has failed to show how the change in law from *McCarty* to USFSPA constitutes a substantial change in circumstances. Indeed, this court recently held that passage of USFSPA does not constitute a substantial change of circumstances that would allow a former wife to reopen a divorce decree and obtain a share of her former husband's military retirement benefits. *See Toone*, 952 P.2d at 114; *see also Throckmorton v. Throckmorton*, 767 P.2d 121, 124 (Utah Ct.App.1988) (stating "legal recognition of a new category of property rights after a divorce decree has been entered, is not itself sufficient to establish a substantial change of circumstances justifying a revaluation of a prior property division"). Thus, although the parties' divorce was granted in the McCarty gap, and could have been reconsidered under USFSPA, the trial court was correct in granting Callahan's motion to dismiss in the absence of a showing of a material change of circumstances.

### B. Change in Factual Circumstances

¶ 12 Childs further argues that the vesting of Callahan's military retirement benefits is a sufficient factual change of circumstances to justify modification of the divorce decree. We disagree.

¶ 13 In this case, the trial court reviewed the "purported factual changes, construing them most favorably to [Childs], and did not find any material change of circumstances, even by including consideration of the changes in law jointly with other material facts that had occurred between 1982 and 1998." In fact, the trial court specifically found that Childs "presented no evidence of a substantial change in circumstances factually." The trial court's factual findings underlying its conclusion that there was no material change of circumstances are entitled to deference. *See Shioji v. Shioji*, 712 P.2d 197, 201 (Utah 1985) (stating "[i]n divorce proceedings ... the trial court is accorded particularly broad discretion"). Because these factual findings support the conclusion that no material change of circumstances existed, we affirm the trial court's decision on this issue.

¶ 14 Furthermore, public policy supports the trial court's denial of Childs's request for modification of the divorce decree. Under Utah law there is a "compelling policy interest favoring the finality of property settlements." *Toone*, 952 P.2d at 114 (citations omitted); *see also Bailey v. Bailey*, 745 P.2d 830, 832 (Utah Ct.App.1987) (stating "potential for long lasting financial entanglement is a valid concern in divorce cases"). Although the right to seek modification of a divorce decree is well settled in Utah, the finality of property settlements is a counter-balancing interest that must be considered. Such considerations will be highly fact intensive and must be examined on a case-by-case basis.

¶ 15 Here, more than thirteen years had passed since the last hearing on the parties' divorce decree. The trial court found that Childs was "aware that [Callahan] was actively involved in the military reserves as early as 1984." Although Childs did not learn of her potential entitlement to Callahan's retirement benefits until 1998, the length of time that has passed since the parties' divorce weighs heavily in favor of denying Childs's request for modification.

We therefore affirm the trial court's order with respect to retirement benefits.

## II. Attorney Fees

¶ 16 Finally, Callahan asks this court to award him attorney fees and costs incurred at trial and on appeal.[1] Under section 78–27–56, attorney fees may be awarded if the court determines that an action is meritless and brought in bad faith. *See* Utah Code Ann. § 78–27–56 (1996). In order to find that a party acted in bad faith, the trial court must determine that at least one of the following factors existed: (i) The party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others. *See Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983).

¶ 17 In this case, the trial court specifically found that Childs "brought her action believing that she was legally entitled to some of [Callahan's] military retirement benefits." The trial court also stated that Childs "honestly felt the facts [in this case] were substantially distinguishable from the *Toone* case." Callahan does not dispute these factual findings and therefore, we accept them as true. *See C & Y Corp. v. General Biometrics, Inc.,* 896 P.2d 47, 52 (Utah Ct.App.1995) ("Because appellants do not challenge the trial court's factual findings, we must accept . . . [them] as true.").

¶ 18 Furthermore, the record does not support a finding that Childs pursued her claim to hinder, delay, defraud, or take unconscionable advantage of Callahan. *See Cady,* 671 P.2d at 151 (holding ill-formed belief in claim does not prove bad faith). We hold that Childs's claim was not asserted in bad faith and Callahan is not entitled to attorney fees on appeal as a result, and also "because attorney fees were not awarded below." *Baker v. Baker,* 866 P.2d 540, 547 (Utah Ct.App.1993).

1. Having not filed a cross appeal on the denial of attorney fees below, Appellee has not properly presented the issue here. However, the denial of fees below supplies the basis for the denial of

## CONCLUSION

¶ 19 Because a change in law does not constitute a substantial change of circumstances and because Childs has failed to demonstrate a substantial change of circumstances factually, we conclude the trial court did not err in refusing to reopen the issue of Callahan's military retirement benefits. Also, we hold that Childs's claim was not asserted in bad faith and therefore, refuse to award Callahan attorney fees incurred at trial and on appeal.

¶ 20 Affirmed.

¶ 21 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

fees on appeal. As a result, we review the action of the trial court regarding attorney fees for that limited purpose only.