2001 UT App 48

**WARDLEY BETTER HOMES AND GARDEN, Plaintiff and Appellee,**

v.

**Tracy CANNON; Cannon Associates, Inc., a Utah corporation; Leland J. Mascaro; and Sheri Mascaro, Defendants and Appellants.**

**Leland J. Mascaro and Sheri Mascaro, Counter-claimants,**

v.

**Wardley Better Homes and Gardens, Counter-defendant.**

**Leland J. Mascaro and Sheri Mascaro, Third-party Plaintiffs,**

v.

**Ruth Mary Hansen and Arles Hansen, Third-party Defendants.**

No. 20000128–CA.

Court of Appeals of Utah.

Feb. 15, 2001.

Steven B. Smith, Darwin H. Bingham, Scalley & Reading, John R. Bucher, and James C. Haskins, Haskins & Associates, Salt Lake City, for Appellee.

David N. Wolf and Mark O. Morris, Snell & Wilmer, Salt Lake City, for Appellants.

Before Judges JACKSON, ORME, and THORNE.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 Tracy Cannon (Cannon) and Cannon & Associates, Inc., (Associates) appeal from the trial court's order denying their request for attorney fees. We affirm.

## BACKGROUND

¶ 2 On November 14, 1993, Leland J. Mascaro and Sheri Mascaro (Mascaros) and Wardley Better Homes and Gardens signed four listing agreements (listing agreements) through Wardley's agent, Arles Hansen (Hansen). The first listing agreement, which was set to expire the next day, reflects the actual agreement between the Mascaros and Hansen. The expiration dates on the other three listing agreements were left blank. Hansen, after obtaining the Mascaros' signatures and without their knowledge or approval, altered the expiration date on the first of the four listing agreements from November 15, 1993 to November 15, 1994, and unilaterally filled in the blank expiration dates on the three other listing agreements with the same fraudulent date. In September 1994, the Mascaros signed a one-year listing agreement with Associates as broker. Later, the Mascaros signed a Real Estate Purchase Agreement agreeing to sell the property to Cannon. The Mascaros and Associates eventually closed on the sale of the property to Cannon in 1995. Cannon received a $115,338.16 commission from the sale.

¶ 3 As a result, Wardley brought an action against the Mascaros to recover a real estate commission under its four listing agreements. The Mascaros answered Wardley's complaint and counterclaimed against Wardley. Further, they filed a third-party complaint against Hansen and his wife Ruth, claiming negligence, fraud, breach of contract, and seeking a declaratory judgment. Wardley filed an amended complaint against Cannon asserting unlawful interference with contract, conspiracy, and seeking a declaratory judgement. Cannon filed a motion for summary judgment, but the trial court denied the motion because there were "material facts at issue." Wardley then filed, with the permission of the trial court, a second amended complaint against Associates for violation of statutes and conversion, in addition to all of the claims filed in the first amended complaint against Cannon. After four days of "carefully evaluating the trial testimony and carefully scrutinizing the numerous documents entered into evidence," the trial court ruled against Wardley on all claims. The court concluded that, due to fraud in the inducement, the listing agreements signed by the Mascaros were voidable and unenforceable. The court also concluded that Wardley had failed to meet its burdens of proof on its claims against Associates. Further, the trial court ruled that the Mascaros were unable to recover on any of their counterclaims or third-party claims.

¶ 4 Associates, Cannon, and the Mascaros requested attorney fees pursuant to Utah Code Ann. § 78–27–56 (1996 and Supp.1999). The trial court denied their requests, concluding that Wardley's claims were not shown to be "without merit" and not brought in "bad faith," as the statute requires. *See* Utah Code Ann. § 78–27–56 (1996 and Supp. 1999). Cannon and Associates appeal the trial court's ruling, arguing that the statutory requirements of section 78–27–56 were satisfied via principles of vicarious liability, which principles they suppose impute knowledge of Hansen's fraudulent actions to Wardley. Appellants contend that even if there was no evidence that Wardley knew of Hansen's fraud before bringing claims against the Mascaros, Cannon, and Associates, principles of vicarious liability should still impute to Wardley the knowledge that the listing agreements under which Wardley brought suit were obtained by fraud. If such knowledge is imputed to Wardley, Appellants reason, then Wardley's suit would be without

merit and brought in bad faith, thus entitling Appellants to attorney fees under section 78–27–56. Appellants challenge the trial court's ruling as to attorney fees purely as a matter of law, marshaling no evidence to dispute any issue of fact.

## STANDARD OF REVIEW

¶ 5 Section 78–27–56 authorizes the court to award attorney fees to a prevailing party "if the court determines that the action or defense to the action was [1] without merit and [2] not brought or asserted in good faith." *Id.* An appeal from a ruling that attorney fees are unavailable under section 78–27–56 involves two standards of review, one for each step of the analysis respectively.[1] Whether a claim is without merit is a question of law which the appellate court reviews for correctness, while a determination of bad faith is a question of fact and is reviewed by the appellate court under a clearly erroneous standard. *See Jeschke v. Willis,* 811 P.2d 202, 203–04 (Utah Ct.App. 1991) (citations omitted); *Pennington v. All-state Ins. Co.,* 973 P.2d 932, 939 n. 3 (Utah 1998).

## ANALYSIS

¶ 6 The trial court did not commit reversible error in ruling that Appellants were not entitled to attorney fees under Utah Code Ann. § 78–27–56 (1996 and Supp.1999). The statute permits an award of attorney fees "to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith," subject to exceptions which do not apply here. Utah Code Ann. § 78–27–56(1) (1996 and Supp.1999). Where an action is without merit and is not asserted in good faith, the court, in its discretion, may deny fees only if it enters in the record the reasons for not awarding fees under section 78–27–56(1). *See id.* § (2). Here, as required by the statute, the trial court stated its reasons for denying Appellants' request for attorney fees, both in its Memorandum Decision and in its Order Denying Attorney Fees.

### I. Challenge Based on Statutory Requirements

¶ 7 A finding of bad faith is a factual question. *Jeschke v. Willis,* 811 P.2d 202, 204 (Utah Ct.App.1991). Thus, to challenge a finding of fact, Appellants must marshal the evidence, citing the appellate court to all the evidence supporting trial court's ruling. Then, Appellants must demonstrate why, even when viewed in the light most favorable to the trial court, the evidence is insufficient to support the challenged finding. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 312 (Utah 1998); *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1313 (Utah App.1991). Here, Appellants failed to marshal the evidence supporting the trial court's finding that Wardley did not act in bad faith.[2] They explain in their reply brief that they purposely decided not to marshal the evidence because they accepted the "purely factual find-

---

1. Citing *Valcarce v. Fitzgerald,* 961 P.2d 305 (Utah 1998) and *Robertson v. Gem Ins. Co.,* 828 P.2d 496 (Utah Ct.App.1992), Appellants assert that we should review the attorney fees issue as a legal question, reviewing only for correctness. Appellants misstate the standard of review. Where section 78–27–56 is invoked as a basis for attorney fees, our decisions specify that "the finding of bad faith is a question of fact and is reviewed by this court under the 'clearly erroneous' standard." *Jeschke v. Willis,* 811 P.2d 202, 204 (Utah Ct.App.1991). "To clarify the matter: As to whether the party lacked good faith, the trial court must make a factual finding of a party's subjective intent. In addition, the trial court must conclude, as a matter of law, that the action was without merit." *Pennington v. All-state Ins. Co.,* 973 P.2d 932, 939 n. 3 (Utah 1998).

   Similarly, Appellants misstate the trial court's findings. They state that "the court found that Wardley, through its agent Arles Hansen ... had altered the dates of certain listing agreements." Further, they state in their brief that the "trial court found that through its agent, Wardley took full advantage of its opportunity to deceive the Mascaros...." While the trial court found that Hansen acted in the manner described, nowhere in the record is there a finding by the trial court that Wardley had either altered listing agreement dates or taken full advantage of an opportunity to deceive.

   Lastly, Appellants indicate that Hansen urged Wardley to initiate its suit, but provide no citations to the record to support that assertion.

2. "[L]ack of good faith ... for the purposes of [Utah Code Ann. § 78–27–56], is synonymous with a finding of 'bad faith.'" *Jeschke,* 811 P.2d at 204 (quoting *Cady v. Johnson,* 671 P.2d 149, 151–52 (Utah 1983)).

ings of the trial court as true." Thus, we must "assume[ ] that the record supports the findings of the trial court," including the finding that Wardley's suit was not pursued in bad faith. *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991). Consequently, because a finding of bad faith is required before a court can award attorney fees under section 78–27–56, our acceptance of this finding as true is fatal to this appeal.[3]

## II. Challenge Based on Vicarious Liability

■ ¶ 8 Appellants seek to overcome both of the statutory requirements by advancing novel theories of vicarious liability. They assert that Wardley can be required to pay their attorney fees by utilizing vicarious liability in two ways which are unsupported by any case law.[4] First, they seek to apply vicarious liability, a theory ordinarily applied only in tort and in limited circumstances to punitive damages, to attorney fees; specifically those available under section 78–27–56. Second, they seek to apply vicarious liability to make the principal liable for *the principal's own* actions, rather than the actions of the agent. Their argument is this: The statutory prongs of a meritless suit pursued in bad faith can both be satisfied simply by imputing Hansen's knowledge of his own fraud to Wardley. But Appellants have cited no legal authority from any jurisdiction in which attorney fees have been awarded under their novel theory. Even so, Appellants argue that the general vicarious tort liability principles set forth in *Hodges v. Gibson Prod. Co.*, 811 P.2d 151 (Utah 1991) support their assertion.

¶ 9 In *Hodges*, the court imputed knowledge of a managerial employee, Cosgrove, to his employer and held his employer liable for Cosgrove's intentional malicious prosecution of Hodges. *See id.* at 163. There, Cosgrove had acted within the scope of his authority in initiating the prosecution. *See id.* However, he knew but did not reveal the probability that he himself committed the crime of which Hodges was accused. *See id.* at 155. The *Hodges* court invoked Restatement (Second) of Torts as the basis for imputing Cosgrove's knowledge to his employer:

> In accordance with and subject to the rules stated in this Topic, the liability of a principal is affected by the knowledge of an agent concerning a matter as to which he acts within his power to bind the principal or upon which it is his duty to give the principal information.

*Id.* at 157 (citing Restatement (Second) of Torts § 272). However, the court clarified that Cosgrove's knowledge could be imputed to his employer only if Cosgrove acted within the scope of his authority[5] and was motivated at least in part to carry out the employer's purposes. *See id.*

■ ¶ 10 Similarly, the *Hodges* court cited Restatement (Second) of Torts § 253 to apply vicarious liability to initiation of a legal action when the agent is authorized to initiate the action. *See id.* But the court only addressed the situation where an employee, rather than his principal, initiates a tortious legal action. *See id.* Thus, *Hodges* stands for the proposition that knowledge of an employee can be imputed to his employer

---

3. Although the trial court mislabeled its finding as to bad faith by inserting it under the heading, "Conclusions of Law," we disregard the label and work to the substance. *See Gillmor v. Wright*, 850 P.2d 431, 433 (Utah 1993).

4. Appellants rely solely on their theory of vicarious liability for reversal. Because this theory ultimately fails, we need not address whether the trial court properly determined if Wardley's suit was without merit or was pursued in bad faith pursuant to section 78–27–56. However, assuming arguendo that we were to reach this issue, Appellants' argument still fails. Whether the listing agreements were legal was unclear. On their face, the listing agreements seemed legitimate. The trial court was required to hear a four-day

trial and to weigh a significant amount of evidence to determine otherwise. The record does not support a finding that Wardley "(i) lacked an honest belief in the propriety of the activities in question; (ii) . . . intended to take unconscionable advantage of others; or (iii) . . . intended to act with the knowledge that [its] activities would hinder, delay, or defraud others", as is required for a finding of bad faith. *Childs v. Callahan*, 1999 UT App 359, ¶ 16, 993 P.2d 244 (quoting *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)).

5. Hansen may have had authority to enter into the listing agreements with the Mascaros; however, he did not, under any agency theory, have authority to fraudulently change the dates on those agreements.

when an employee tortiously brings a legal action (which is at least partially motivated to carry out the employer's purposes) if it is within the scope of the employee's authority to bring the action. Accordingly, for Appellants to succeed on their claim of vicarious liability, based on *Hodges*, they would have to show that Wardley's suit was brought: (1) in tort, (2) by Hansen who (3) was acting within the scope of his employment in bringing the suit. Appellants have not alleged, nor shown, any of these factors.

¶ 11 Nevertheless, Appellants urge us to stretch the vicarious liability principles set forth in *Hodges* as follows: "[W]here the principal filed legal proceedings at the agents's behest, the principal has no less liability as the main actor than it would have if the agent had instituted such proceedings on behalf of the principal." Appellants cite no authority for this proposition.[6] Instead, they take language from *Hodges* and remold it to fit their theory. That is, they recast the passage, "the liability of a principal is affected by the knowledge of an agent *concerning a matter as to which he acts,*" *id.* at 157 (emphasis added), to mean Wardley's liability is effected by Hansen's knowledge *that Hansen acted fraudulently* toward the Mascaros. What *Hodges* stands for, however, is that the agent's knowledge of an opposing party's innocence, *at the time the agent tortiously initiates legal proceedings* on behalf of his principal, is imputed to the principal. In *Hodges,* Cosgrove, the agent, initiated the legal action, whereas here, the agent Hansen did not initiate the action. Hansen Appellants rewrite *Hodges,* without citing any authority from any jurisdiction to do so. There is no legal support for Appellants' claim that vicarious liability should be applied in a manner that imputes the agent's knowledge to

the principal to answer for the principal's own actions.[7]

### CONCLUSION

¶ 12 Appellants' statutory challenge fails because they did not marshal the evidence regarding bad faith. Appellants' vicarious liability argument is without legal justification. Accordingly, we affirm.

¶ 13 I CONCUR: WILLIAM A. THORNE, JR., Judge.

¶ 14 I CONCUR IN THE RESULT: GREGORY K. ORME, Judge.

---

6. Appellants, also propose an "unfairness" public policy argument to support their position. They argue that unfairness arises because their vicarious liability theory runs into a legislative roadblock, which limits the ability to file suits for real estate commissions to brokers; agents cannot sue. Thus, unless vicarious liability is invoked, brokers can escape liability for filing a bad faith claim for commissions even though encouraged to do so by an agent. This argument does not persuade us to apply their novel theory of vicarious liability.

7. Use of vicarious liability as a means of awarding attorney fees under section 78–27–56 is a task better suited to the legislature than to this Court. On a purely theoretical spectrum, it is possible there is a point at which knowledge may be imputed to a principal in a case where the principal initiates a suit based upon fraudulent actions of its agent, but we see no need to draw that line today.