2005 UT 46

**STILL STANDING STABLE, LLC, Plaintiff and Appellant,**

v.

**Ross L. ALLEN, Norma H. Allen, and Monastery of Our Lady, Defendants and Appellees.**

No. 20040354.

Supreme Court of Utah.

July 22, 2005.

David L. Arrington, Gretta C. Spendlove, Erik A. Olson, Salt Lake City, for plaintiff.

Timothy W. Blackburn, Mara A. Brown, Ogden, for defendants.

DURHAM, Chief Justice:

¶ 1 In this case, plaintiff appeals the trial court's award of attorney fees for bad faith pursuant to Utah Code section 78–27–56. We reverse.

## BACKGROUND

¶ 2 In September 1998, Still Standing Stable, LLC (Still Standing) purchased 170 acres of property in the Ogden Valley from the State of Utah School and Institutional Trust Lands Administration (SITLA). The information provided by SITLA regarding the property read:

There is likely no access. Although there is an ungraveled and unimproved road leading to the property, it crosses privately owned lands. Historical access may exist, but the Trust Lands Administration is not guaranteeing access to the property.

¶ 3 In February 2002, Still Standing filed a lawsuit against neighboring property owners to establish access to its property, asserting four legal theories: (1) easement by implication; (2) easement by necessity; (3) the creation of a public road under state law; and (4) the existence of a public road under Federal Revised Statute 2477, 43 U.S.C. § 932 (1970) (repealed 1976).[1] Still Standing relied primarily on the opinion of an expert witness, a registered land surveyor, who concluded that a public road had historically run up to and across Still Standing's property and that easements by implication and necessity existed.

¶ 4 The trial court denied the defendants' motion for summary judgment because it found that Still Standing's expert raised issues of material fact. At trial, the court also denied the defendants' motion for directed verdict. Nevertheless, while the court indicated, at the end of Still Standing's evidence, that it believed the expert had stated his honest opinion, it ultimately rejected his testimony as unpersuasive in the absence of any historic or contemporary map, photograph, or other evidence to support it. The trial court also rejected Still Standing's arguments based on federal and Utah statutes regarding the existence of an historical road. Finally, the trial court found that there was insufficient evidence to support Still Stand-

ing's arguments regarding the existence of an easement by implication or necessity. Thereafter, the trial court concluded that the defendants were entitled to an award of their attorney fees pursuant to Utah Code section 78–27–56 because the plaintiff's complaint was brought without merit and in bad faith.

¶ 5 Among other findings of fact, the trial court made the following findings that appear connected to its decision to award attorney fees under section 78–27–56:

7. Quite incredulously to this Court, Plaintiff purchased the affected property without making any attempt to determine whether there was any legal access to the property.

. . . .

12. The state, in advertising the affected property for sale, stated that there was likely no access, although its statement could be construed to imply that if there was access, it was certainly unclear, and that any purchaser would be wise to check with the adjoining property owners regarding the means of access to and from the property.

. . . .

53. The Court finds that Still Standing brought this action knowing it had no legal right of ingress/egress to its land-locked property, and that a suit was filed in the hope that Plaintiff could persuade the Court to act on a Motion, or that the Court would fail to apply the evidence to the law, or by some chance, that the Court would grant an ingress/egress to it.

54. Plaintiff had been given clear notice that there was probably no ingress/egress. And then it has tried to come up with some ingenious concepts and legal conclusions that are totally unsupported by the evidence.

55. This filing is totally frivolous and without factual or legal basis or merit.

. . . .

1. In the act repealing R.S. 2477, Congress included a savings provision that preserved existing road claims: "Nothing in this Act, or in any amendment made by this Act, shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this Act." Federal Land Policy and Management Act of 1976, Pub.L. No. 94–579, § 701(a), 90 Stat. 2743, 2786 (1976). Still Standing relies on this savings provision to assert its Federal Revised Statute 2477 public road claim.

57. Plaintiff had an obligation to evaluate the legal merits of this case before continuing to promote its legal theories.

. . . .

61. However, Plaintiff did not adequately evaluate the legal concepts that apply here, nor did it honestly and objectively evaluate the facts.

. . . .

67. Because the Court has determined this to be a frivolous action, the Court is awarding attorneys' fees and costs.

68. There was no sense of this case going to trial and resulting in the defendant property owners having to incur a great deal of expense. That is as bad as taking property from the defendants without any due process or legal justification, and especially when there was no substantial basis in fact or law to proceed with this lawsuit.

¶ 6 Still Standing appeals the trial court's award of attorney fees but does not appeal the dismissal of its underlying claims. We have jurisdiction pursuant to Utah Code section 78–2a–3(2)(j) (2002).

## ANALYSIS

¶ 7 The issue before us is whether the trial court erred in awarding attorney fees to defendants under Utah Code section 78–27–56. Section 78–27–56 provides, in relevant part: "In civil actions, the court shall award reasonable attorney's fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith. . . ." Utah Code Ann. § 78–27–56 (2002). In order to award attorney fees under this provision, a trial court must determine *both* that the losing party's action or defense was "without merit" *and* that it was brought or asserted in bad faith. *Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983).

¶ 8 Here, Still Standing does not challenge the trial court's conclusion that its case was without merit. It argues, rather,

that the court either misapplied section 78–27–56 by failing to make an independent bad faith finding or made such a finding based on insufficient facts. Whether the trial court properly interpreted the legal prerequisites for awarding attorney fees under section 78–27–56 is a "question of law" that we "review . . . for correctness." *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 17, 977 P.2d 1201 (holding that statutory interpretation presents a legal question). The question of whether, under the second prerequisite of section 78–27–56, a claim was brought in "bad faith" is a "question of fact [that] we review . . . under a clearly erroneous standard."[2] *In re Sonnenreich,* 2004 UT 3, ¶ 45, 86 P.3d 712. As discussed below, to the extent that the trial court conflated the "without merit" and "bad faith" requirements, we hold its conclusion to be incorrect. To the extent the court made an independent finding of bad faith, we hold this finding to be clearly erroneous.

¶ 9 Section 78–27–56 is "narrowly drawn and 'not meant to be applied to all prevailing parties.'" *Id.* at ¶ 46 (quoting *Cady,* 671 P.2d at 151). While an action "must be meritless to award attorney fees under section 78–27–56, the mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith." *Id.* at ¶ 49 (citing *Utah Dep't of Soc. Servs. v. Adams,* 806 P.2d 1193, 1198 n. 6 (Utah Ct. App.1991)). "[A] finding of bad faith turns on a factual determination of a party's subjective intent." *Id.* (citing *Pennington v. Allstate Ins. Co.,* 973 P.2d 932, 939 n. 3 (Utah 1998)).

¶ 10 In this case, the trial court did not indicate a clear basis for its finding of bad faith. It appears from the court's findings that it conflated the "without merit" and "bad faith" requirements of section 78–27–56, believing that an absence of legal merit meant that bad faith could be presumed. Our precedent demonstrates that such an approach is incorrect and that the trial

---

2. "When challenging a district court's findings of fact, the challenging party must show that the evidence, viewed in a light most favorable to the [district] court, is legally insufficient to support the contested finding." *In re Sonnenreich,* 2004

UT 3, ¶ 45 n. 14, 86 P.3d 712 (alteration in original) (internal quotation omitted). Here, Still Standing sufficiently marshaled all available evidence.

court's findings were insufficient to support an award of attorney fees in this case.

¶ 11 In *Cady*, we reversed a finding of bad faith where the plaintiffs failed to research an issue as instructed at a pretrial conference, even though such research would have led to the discovery that the plaintiff's claim was meritless. 671 P.2d at 152. More recently, in *Sonnenreich*, we stated that bad faith constitutes a separate element under section 78–27–56 and cautioned against intertwining the statutory "without merit" and "bad faith" requirements. 2004 UT 3 at ¶ 49, 86 P.3d 712. We stated that "it does not follow that simply because the [plaintiff] had no legal foundation to bring the action that it was also acting in bad faith." *Id.* We reversed the trial court's award of attorney fees in that case because the trial court had failed to make the specific findings necessary to support a finding of bad faith. *Id.* at ¶ 50.

¶ 12 In *Sonnenreich*, we further clarified that the "bad faith" determination must be made independently of the "without merit" determination by defining good faith, for purposes of section 78–27–56, as maintaining: "(1) [a]n honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Id.* at ¶ 48 (alteration in original) (internal quotation omitted). "To establish a lack of good faith, or 'bad faith' under section 78–27–56, a party must prove that one or more of these factors is lacking." *Id.; see also Chipman v. Miller*, 934 P.2d 1158, 1163 (Utah Ct.App.1997) (reversing an order awarding attorney fees where the trial court neither stated which of the bad faith factors applied nor discussed any evidence supporting any factor). Thus, again, without such further proof, lack of legal merit is insufficient for an attorney fee award under this section.

¶ 13 The trial court's finding of bad faith may be upheld if there is sufficient evidence in the record to support a finding that at least one of these three factors applies. *Cady*, 671 P.2d at 152. Here, there is no evidence in the record that Still Standing had the subjective intent to bring this action in bad faith. The trial court's finding that the action was frivolous is insufficient to establish bad faith. While the trial court found fault with Still Standing's prepurchase investigation of property access issues and with the adequacy of its legal research before it filed a claim, the conclusion that the plaintiff brought the action "knowing" it had no right of access in the "hope" that the trial court would provide such access is unsupported by the record.

¶ 14 Additionally, the trial court's conclusion that Still Standing was placed on "clear notice" by SITLA's disclaimer that "[t]here is likely no access" to the property ignores the ambiguity created by the disclaimer's statement that "[h]istorical access may exist." Given that the plaintiffs brought a claim seeking to establish historical access, and given that the court itself believed their expert witness to be honest in his opinion that historical access existed, the evidence of bad faith is inadequate. Further, there is no evidence in the record that Still Standing intended to take unconscionable advantage of others on this point. Nor is there any indication that Still Standing engaged in dilatory tactics or other efforts calculated to harass the opposing party and drive up litigation costs.

¶ 15 We also reject the defendants' argument that, in addition to the three bases for finding bad faith mentioned above, this court in *Cady* introduced a fourth basis, which it referred to as "self-induced myopia." 671 P.2d at 152. According to the defendants, this would allow a court to infer bad faith from the "absolute lack of merit" of a plaintiff's claim. In fact, however, we recognized in *Cady* that although "[p]laintiffs were clearly pursuing a meritless claim and better preparation might well have disclosed that to them ... that conduct does not rise to lack of good faith." *Id.* We therefore disagree that *Cady* established a fourth factor and decline the defendants' invitation to do so here.

¶ 16 We again emphasize that in order to find that a party acted in bad faith under section 78–27–56, there must be sufficient evidence that one or more of the three *Cady* factors existed. *Id.* We remind trial

courts that the "reason for awarding attorney fees [based on bad faith] is to punish the wrongdoer, and not compensate the victim," and that fees should therefore be awarded only upon specific evidence of bad faith. Jay Rosenblum, *Standard of Review: The Appropriate Standard of Review for a Finding of Bad Faith*, 60 Geo. Wash. L.Rev. 1546, 1551 (1992). Because the trial court's finding of bad faith was clearly erroneous, and because it erred to the extent it conflated the "without merit" and "bad faith" requirements of section 78–27–56, we reverse the trial court's order awarding attorney fees.

## CONCLUSION

¶ 17 We conclude that the trial court appears to have incorrectly conflated the requirements of "bad faith" and "without merit" under Utah Code section 78–27–56. Its bad faith finding is unsupported by evidence in the record and is thus clearly erroneous. We therefore reverse the order awarding attorney fees to the defendants.

¶ 18 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.