IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Lori Blum, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellant, | ) | Case No. 20110116-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (July 19, 2012) |
| Rainer Dahl, | ) | |
| | ) | 2012 UT App 198 |
| Defendant and Appellee. | ) | |

-----

Third District, Salt Lake Department, 070914252
The Honorable Robin W. Reese

Attorneys:    Patrick J. Ascione and Tyna-Minet Anderson, Provo, for Appellant
              Gregory N. Hoole, Salt Lake City, for Appellee

-----

Before Judges Voros, Orme, and Christiansen.

ORME, Judge:

¶1     Lori Blum challenges the district court's award of attorney fees to Rainer Dahl, the successful defendant in this lawsuit.  Blum argues that the court considered trial evidence in determining whether the lawsuit was filed in bad faith, in violation of an alleged stipulation that the issue would be determined solely on the basis of post-trial affidavits.  We reject this argument and affirm.

¶2     Blum and Dahl resided in the same condominium complex in Salt Lake City. Blum alleges that after a meeting of the condominium association in October 2006, Dahl made vulgar and insulting comments to Blum's daughter.  Blum claims that she then approached Dahl to speak with him and that he lunged at her, shouted at her, and spit

on her. Dahl later filed a police report against Blum's daughter, also a resident of the complex, concerning events arising from that same incident.

¶3     Blum alleges that she was then the target of harassment, discrimination, and hostility from several persons, the condominium association, and the management company for the condominium. Blum further claims that Dahl used his position as the president of the board of directors of the association to harass Blum by falsely alleging that she violated condominium rules and by selectively enforcing rules against her and her daughter that were not enforced against others.

¶4     Blum filed a lawsuit seeking $200,000 in damages from Dahl for assault and battery based upon the alleged shouting and spitting incident. In responding to Blum's complaint, Dahl provided notice of his intent to seek attorney fees for "defending against the Complaint which is frivolous as set forth [in] Utah R. Civ. P. 11, and is filed in bad faith . . . pursuant to Utah Code Ann. § 78-27-56." Dahl's counsel attempted to settle the case before trial on more than one occasion, but all offers were rejected.

¶5     On appeal, Blum claims that the trial court failed to adhere to the parties' stipulation when it considered evidence other than Blum's post-trial affidavit in deciding whether the lawsuit was filed in bad faith. "The question of whether, under the second prerequisite of 78-27-56, a claim was brought in 'bad faith' is a 'question of fact' that we review under a clearly erroneous standard." *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 8, 122 P.3d 556 (ellipses omitted) (quoting *In re Sonnenreich*, 2004 UT 3, ¶ 45, 86 P.3d 712). Blum contends that even if this court concludes that the trial court *was* permitted to consider evidence beyond Blum's post-trial affidavit, the record does not contain evidence legally sufficient to support the trial court's finding of bad faith. "When challenging a district court's findings of fact, the challenging party must show that the evidence, viewed in a light most favorable to the [district] court, is legally insufficient to support the contested finding." *In re Sonnenreich*, 2004 UT 3, ¶ 45 n.14 (citation and internal quotation marks omitted) (alteration in original).

¶6     As a threshold matter, we must determine whether the court acted outside the bounds of the alleged stipulation when it considered trial evidence in making its determination of bad faith. Dahl argues in his brief that "[t]he court instructed the parties that [bad faith] evidence could be submitted, if necessary, after trial. However, the trial court never entered any order, nor was a stipulation ever proposed, that would have precluded the court from considering evidence admitted on the merits at trial that

also happened to shed light on the issue of bad faith, as merits evidence often does." Upon our review of the record, we agree with Dahl.

¶7     At the court's suggestion, the parties agreed not to present evidence specifically related to Blum's good or bad faith in bringing the lawsuit, so as to avoid confusing the issues for the jury and to avoid possible prejudice to Blum. Counsel and the court further agreed to exclude Dahl's arguments related to attorney fees from the general presentation of merits evidence to the jury. The court concluded by stating: "I just kind of hope we stay away from that stuff. If it becomes relevant later on, I'll let you do it with an affidavit." It is apparent that the court's rationale for precluding bad faith evidence during the jury phase of the trial was to simplify the jury's consideration of the matters it would decide. But we see no indication in the transcript that post-trial affidavits, while anticipated, were to be the sole evidence the court would consider in evaluating bad faith.

¶8     After the jury was excused following its verdict in favor of Dahl, Dahl's counsel again raised the issue of attorney fees with the court:

> [Counsel for Dahl]: I'm happy to make my argument to the Court at this point. I don't think there's additional evidence that I would introduce other than what's already been introduced. I think it's a pretty straightforward issue. Your Honor may want to take it under advisement, but that's completely up to you. . . .
>
> THE COURT: Sure. I understand why you wouldn't want to expend any other time or resources to come back later on, so I'm happy to proceed that way. Counsel, how do you want to proceed?
>
> [Counsel for Blum]: Your honor, frankly, I had thought that we would be doing it the way that the [c]ourt suggested originally, which is to simply hand in affidavits to that effect.
>
> THE COURT: If there were additional affidavits that you wanted to submit?

[Counsel for Blum]: Yes, presumably from my client with regards to her intentions and so forth.

[Counsel for Dahl]: If there's additional evidence that wasn't elicited in trial because of those (inaudible) that's fine. I hate to draw this out and incur even more expense and that sort of thing, but—

THE COURT: Yeah. We did talk about that at the beginning that there would be certain evidence that we wouldn't bring into the trial for fear of prejudice to the jury, but Counsel could bring that up later.

It is clear from the statements of the trial court and counsel that the purpose of the pretrial stipulation was only to avoid presenting evidence *strictly* related to bad faith during trial—an issue that the parties agreed that the court, not the jury, should resolve. Thus, the court was not precluded from considering trial evidence in determining whether Dahl was entitled to attorney fees under the statute. *See* Utah Code § 78B-5-825 (2008).

¶9     We next consider whether the trial court's finding of bad faith was clearly erroneous. *See Still Standing Stable*, 2005 UT 46, ¶ 8 (stating that bad faith is a factual question determined by the trial court, which we review under the clearly erroneous standard). In doing so, we recognize that the bad faith attorney fee statute is not intended to be routinely utilized to award fees to prevailing defendants:

Section 78-27-56 is narrowly drawn and not meant to be applied to all prevailing parties. While an action must be meritless to award attorney fees under section 78-27-56, the mere fact that an action is meritless does not necessarily mean that the action is also brought in bad faith. A finding of bad faith turns on a factual determination of a party's subjective intent.

*Id.* ¶ 9 (citations, internal quotation marks, and brackets omitted). The determinations of merit and bad faith are the subjects of independent analyses. *See id.* ¶ 12 (citing *In re Sonnenreich*, 2004 UT 3, ¶ 48). "A party acts in bad faith when he brings an action and

either (1) lacks an honest belief in the propriety of the activities in question, (2) intends to take unconscionable advantage of others, or (3) intends to or has knowledge of the fact that his actions will hinder, delay, or defraud others." *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 29, 61 P.3d 1009 (citing *Cady v. Johnson*, 671 P.2d 149, 151 (Utah 1983)). A finding of bad faith is upheld when "there is sufficient evidence in the record to support a finding that at least one of these three factors applies." *Still Standing Stable*, 2005 UT 46, ¶ 13 (citing *Cady*, 671 P.2d at 152). Blum does not challenge the court's determination that her case lacked merit. Nor does she challenge the amount awarded. It follows that the attorney fee award must be upheld if the court had a sufficient basis for finding bad faith. *See Wardley*, 2002 UT 99, ¶ 31 ("Where a party has acted on a meritless claim and in bad faith, in most cases it would be inequitable *not* to award attorney fees.") (emphasis in original).

¶10    Here, ample evidence suggested that Blum was motivated to bring this lawsuit against Dahl not to recover damages for an intentional tort he committed, but in an effort to end perceived harassment and discrimination from the condominium association. Blum even stated at trial that this was her "hope" and that she "filed the lawsuit to try to get [the condominium association] to stop harassing me." Blum testified that "the management company and the [condominium association] were doing everything they could to harass us to the point where we would move from our condo" and that she was the "target of extreme aggression, discrimination, hostility and false gossip throughout the building." While Blum claimed that Dahl was involved in this campaign against her because he "ha[d] great influence in the building, because he was president" of the condominium association, she testified at trial that she filed her lawsuit against Dahl because she wanted the condominium association and those she felt were persecuting her and her daughter to "leave us alone."[1] According to her brief, "[w]hen Ms. Blum realized that the management company would not stop sending

---

[1]The first instance of such discrimination claimed by Blum involved an attempt to "forc[e]" Blum's daughter to remove her dog, a Chihuahua, from the complex, even though she claimed that the dog was a "service animal." (The trial court found it odd that Blum, a nurse, could not identify any medical condition her daughter had that would warrant a service animal.) Additionally, Blum felt Dahl singled out her daughter in filing public intoxication charges against her after the condominium association meeting, at which wine was served. Blum also claimed to have received "numerous notices" for "various alleged rule violations" over the course of months before filing this lawsuit.

notices regarding alleged rule violations, she thought that if she filed a lawsuit the alleged harassment would stop." Blum testified at trial that she "just wanted them to shut up and leave us alone and quit persecuting us." Blum did not explain how filing a lawsuit against Dahl individually would culminate in her obtaining relief as against the management committee and the condominium association.

¶11   At trial, Blum testified that she endured "extreme emotional distress and anxiety" from the "untold fear and terror" that she experienced as a result of Dahl's alleged attack. Blum, however, never sought medical or mental health treatment following the claimed attack. Witnesses to the incident testified that they did not see Dahl act in an intimidating and threatening manner. There was also conflicting testimony, even from Blum herself, about whether Dahl spat on her during the interaction.[2] Additionally, Blum did not contact the police until after she learned that Dahl and others had filed criminal complaints against her daughter arising from the events that transpired after the condominium association meeting.[3]

¶12   Blum was also unable to provide a basis for why she felt entitled to damages totaling $200,000 other than that she incurred attorney fees in the litigation and costs in readying her condominium for sale and in selling her condominium. Although Blum's post-trial affidavit claimed that she had a subjective belief in the propriety of her claims against Dahl, the record supports the finding of the trial court that "Ms. Blum was unhappy with the way she and her daughter were treated by the [condominium] association, but for some reason decided to sue Mr. Dahl instead of the association." *Cf.*

---

[2]While Blum alleged in her complaint that Dahl spat on her during the altercation following the condominium association meeting, much of her conduct suggests otherwise. Following the incident, she sent a letter to the condominium association about the alleged assault and battery but did not claim in the letter that Dahl had spit on her. In a police report filed after the incident, Blum did not include anything about spitting. In insisting later that Dahl spit on her, Blum admitted that she did not know whether Dahl did so intentionally. And in her pretrial declaration, Blum did not allege that Dahl had intentionally spit on her.

[3]The police report states that Blum "didn't report [the incident] until now because she just learned that the suspect, meaning Mr. Dahl, filed a report against her and her daughter . . . and the suspect is attempting to evict [Blum's daughter] from the condominium complex."

*Webster v. Sill*, 675 P.2d 1170, 1172-73 (Utah 1983) (stating that in reviewing a motion for summary judgment, the trial court may disregard a subsequent affidavit when it does not explain an apparent discrepancy with earlier deposition testimony). Although Blum insisted that she had a good faith basis for filing her lawsuit, the record evidence—including some of her own testimony—supports the trial court's assessment that Blum could not have had an "honest belief in the propriety" of her lawsuit against Dahl. *See Wardley*, 2002 UT 99, ¶ 29.

¶13     Additionally, there was adequate support in the record to find that Blum testified untruthfully regarding a number of issues related to her claims. Blum contends that "[a]t most these facts can support only a finding regarding Ms. Blum's credibility." She is incorrect. "[T]he trial court's belief that [Blum] testified untruthfully is sufficient to support [a] finding [of bad faith,] and we will not disturb it on appeal." *Gallegos v. Lloyd*, 2008 UT App 40, ¶ 17, 178 P.3d 922. Given that Blum has not successfully challenged the trial court's findings that she lacked an honest belief in the propriety of her claims and that her testimony was incredible, the trial court's finding that Blum acted in bad faith was not clearly erroneous.

¶14     Affirmed.

_____
Gregory K. Orme, Judge


-----


¶15     WE CONCUR:


_____
J. Frederic Voros Jr.,
Associate Presiding Judge


_____
Michele M. Christiansen, Judge